## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WESTERN WOOD PRESERVERS INSTITUTE**, *et al.*,<br><br>        *Plaintiffs*,<br><br>v.<br><br>**JOHN M. McHUGH, Secretary** **of the Army**, *et al.*,<br><br>        *Defendants*. | Civil Action No. 12-1253 (ESH) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Western Wood Preservers Institute, Treated Wood Council, Southern Pressure Treaters' Association, Creosote Council, and Railway Tie Association ("plaintiffs") sued John M. McHugh in his official capacity as the Secretary of the Army, the United States Army Corps of Engineers, and Rebecca Blank in her official capacity as Acting Secretary of Commerce ("defendants" or "Corps"). Plaintiffs challenged the Corps' approval of two regional conditions to nationwide permits under the Clean Water Act, as well as the issuance of certain operating procedures for activities that are regulated by that Act.

On February 27, 2013, this Court held that plaintiffs lacked standing to bring their claims, and further dismissed certain of plaintiffs' claims for failure to state a claim under Rule 12(b)(6). *See Western Wood Preservers Inst. v. McHugh*, No. 12-cv-1253, 2013 WL 692789 (D.D.C. Feb. 27, 2013) ("*WWPI I*"). Plaintiffs have now moved for leave to file a Third Amended Complaint, or, in the alternative, for reconsideration of this Court's earlier ruling. (Mar. 20, 2013 [ECF No. 20] ("Mot.").) For the reasons stated below, plaintiffs' motion for reconsideration is granted in part and denied in part, and their motion for leave to amend is denied.

1

**BACKGROUND**

The factual background of this case was laid out in this Court's initial ruling. *See WWPI I*, 2013 WL 692789, at *1-3.

In that ruling, the Court granted defendants' motion to dismiss plaintiffs' complaint for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). *See id.* With respect to standing, the Court first found that plaintiffs could not establish associational standing because they had not identified a single member firm that had suffered the alleged economic harm. *Id.*, at *3-4. The Court further concluded that the associations themselves had not sufficiently alleged any environmental or procedural harm and did not have prudential standing to sue under the National Environmental Policy Act. *Id.*, at *4-8. Finally, the Court held that plaintiffs had failed to state a claim under the Regulatory Flexibility Act ("RFA") and the Endangered Species Act ("ESA"). *Id.*, at *8-11.

Plaintiffs now seek leave to file a Third Amended Complaint with two additional plaintiffs, both members of organizational plaintiff Western Wood Preservers Institute. (*See* Mot. at 1-2.) They also seek reconsideration of the Court's Rule 12(b)(6) dismissal of their claims under the RFA and ESA, but do not challenge the dismissal of their claims under the NEPA for lack of prudential standing. (*See id.* at 1-3 & n.1.)

**ANALYSIS**

I.   **STANDING**

A.   **Leave to Amend**

Plaintiffs seek leave to amend their complaint under Rule 15(a), which provides that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendants, however, insist that the Court's order granting their motion to dismiss amounted to

an entry of final judgment, such that plaintiffs must meet the standard under Rule 59(e) for a motion to reconsider.  (*See* Opposition to Plaintiffs' Motion for Leave to File Third Amended Complaint, May 1, 2013 [ECF No. 23] ("Opp'n") at 1-2, 4-5.)  Reconsideration under Rule 59(e) is a "more stringent standard," under which leave to amend "need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting *Nat'l Trust v. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993)).

Defendants are correct that plaintiffs must meet the higher standard of Rule 59(e) in this instance.  It is well established that "[w]here a district court is presented with a motion for leave to amend following a dismissal, the court considers the motion for leave to amend only *after* consideration of a party's motion to amend or alter the dismissal."  *DeGeorge v. United States*, 521 F. Supp. 2d 35, 40-41 (D.D.C. 2007) (citing *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001)).  Indeed, as done here, the *DeGeorge* Court applied that rule notwithstanding the fact that it had previously dismissed the plaintiff's case *without prejudice*. *See* Order, *DeGeorge v. United States*, No. 04-1605 (D.D.C. Jan. 3, 2007), ECF No. 42.  As in *DeGeorge*, after this Court's February 27, 2013 Order granting defendants' motion to dismiss, there were no remaining claims pending against defendants.  Thus, the Court may only consider plaintiffs' motion for leave to amend if it first grants plaintiffs' motion for reconsideration.

Because, for the reasons stated below, the Court declines to reconsider its dismissal of plaintiffs' complaint, it need not address the merits of plaintiffs' motion for leave to amend.

**B.** **Reconsideration**

In the alternative to their motion for leave to amend, plaintiffs seek reconsideration of this Court's ruling that they failed to establish associational standing. (*See* Mot. at 9-14.) Specifically, plaintiffs claim that this Court's requirement that they identify specific member firms that have suffered the alleged harm is "plainly contrary to controlling D.C. Circuit and Supreme Court precedent." (*Id.* at 9.)

Plaintiffs argue that two of the cases on which defendants and this Court relied are inapposite because they are direct appeals from administrative decisions and therefore "ha[ve] no relevance to a civil action in district court initiated by the filing of a complaint." (*Id.* at 10.) However, the mere fact that those cases arose in a different context than this one does not mandate a contrary outcome in this case.

Nor do the other cases plaintiffs cite render this Court's ruling "clearly erroneous." In their motion, plaintiffs point to several instances where courts found it unnecessary for a plaintiff to identify specific member firms to support associational standing at the motion to dismiss stage. (*See* Mot. at 12-13.) As an initial matter, none of the cases cited bind this Court. Moreover, there are plenty of contrary examples from other courts across the country. *See, e.g.*, *Nationwide Ins. Indep. Contractors Ass'n, Inc., v. Nationwide Mut. Ins. Co.*, No. 12-2549, 2013 WL 1875397, at *4 (3d Cir. May 3, 2013) (affirming dismissal of complaint because "[i]n order to satisfy the first *Hunt* prong, associations must present 'at least one identified member' who has suffered a specified harm"); *Nat'l Alliance for Accessibility, Inc. v. Belk, Inc.*, No. 12-386, 2013 WL 1614672, at *4 (E.D.N.C. Apr. 15, 2013) (granting motion to dismiss because, "[h]aving concluded that Payne does not have standing, and plaintiffs having specifically identified no other members of the organization with standing to sue, National Alliance cannot

4

assert associational standing"); *Coal. for ICANN Transparency Inc. v. Verisign, Inc.*, 464 F. Supp. 2d 948, 956 (N.D. Cal. 2006) ("CFIT's initial complaint only alleged vague categories of members that might suffer harm.  Thus, the court found that associational standing had not been alleged because CFIT failed to name even one member."); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany, N.Y.*, 250 F. Supp. 2d 48, 56 (N.D.N.Y. 2003) (in ruling on motion to dismiss, noted that the plaintiff "has not sufficiently plead that such injuries have been incurred by any of its specific members so as to properly demonstrate that individual members have suffered an injury in fact").

Within this district, the Court is aware of one case where a plaintiff did not need to identify any affected members by name.  *See Ass'n of Am. Physicians & Surgeons, Inc. v. Sebelius*, 901 F. Supp. 2d 19, 31 (D.D.C. 2012) ("[A] plaintiff need not identify the affected members by name at the pleading stage.").  However, as defendants correctly point out, the relevant language in that case was only *dicta*, since Judge Jackson ultimately found that plaintiffs lacked standing based on their failure to establish an injury in fact.  *See id.* at 32-34.  At the same time, two other judges in this district have agreed with this Court in requiring that such member firms be named at the motion to dismiss stage.  *See Californians for Renewable Energy v. U.S. Dep't of Energy*, 860 F. Supp. 2d 44, 48 (D.D.C. 2012) (discussing representational standing on a motion to dismiss and noting that "the organization must name at least one member who has suffered the requisite harm"); *Common Cause v. Biden*, 909 F. Supp. 2d 9, 21 n.6 (D.D.C. 2012).[1]

---

[1] Plaintiffs argue that *Common Cause* is not relevant to this debate because the plaintiffs there failed to respond to the defendants' argument that they were required to name specific member firms who had been injured.  (*See* Mot. at 13.)  However, if there was no such requirement, the plaintiffs' failure to address it would not have amounted to a concession that they lacked

The mere fact that there are conflicting opinions on this issue among the various courts of this country—and even among the judges of this court—does not render this Court's ruling "clearly erroneous," as required to survive a motion to reconsider under Rule 59(e).  Nor have plaintiffs even attempted to argue that there has been an "intervening change of controlling law" or that there is any newly-available evidence that should compel this Court to reach a different conclusion.  Thus, the Court concludes that reconsideration of its earlier ruling on standing is not warranted in this instance.

## II.      FAILURE TO STATE A CLAIM

Plaintiffs also seek reconsideration of three of the claims that this Court denied with prejudice for failure to state a claim.

### A.      RFA Claims

Plaintiffs seek reconsideration of the Court's dismissal of claims 7 and 12 under the RFA (re-pled as claims 6 and 10 in the proposed Third Amended Complaint) for failure to state a claim under Rule 12(b)(6), arguing that the addition of new plaintiff Western Wood Structures, Inc. remedies the previous pleading deficiencies.  (*See* Mot. at 5-6.)

However, those claims were also dismissed for lack of associational standing, *see WWPI I*, 2013 WL 692789, at *8, and the Court has already denied plaintiffs' motion for reconsideration with respect to associational standing.  (*See supra* Section I.)  Because the Court has denied plaintiffs' request for leave to amend their complaint, it need not rule on any arguments that relate to new additions in the amended complaint.  If plaintiffs re-file their complaint with additional plaintiffs, the Court can consider whether those plaintiffs may bring a claim under the RFA at that time.

---

associational standing.  Thus, Judge Sullivan's ruling that the plaintiffs in *Common Cause* lacked associational standing further bolsters this Court's conclusion.

### B.    ESA Claim Against the NMFS

Plaintiffs also seek reconsideration of the Court's dismissal of claim 10 against the

NMFS under the ESA (re-pled as claim 9) for failure to state a claim under Rule 12(b)(6).  (*See*

Mot. at 6-9.)

As an initial matter, those claims were also dismissed for lack of associational standing,

*see WWPI I*, 2013 WL 692789, at *10, and the Court has already denied plaintiffs' motion for

reconsideration with respect to associational standing.  (*See supra* Section I.)  Thus, plaintiffs

will not be permitted to amend their complaint and proceed on this claim.  Nevertheless, the

Court will go on to consider the merits of plaintiffs' request for reconsideration of claim 10 to

clarify whether they may attempt to re-plead this claim in a new lawsuit.

In addition to a lack of standing, plaintiffs' ESA claim against the NMFS was also

dismissed for failure to state a claim under Rule 12(b)(6).  *See WWPI I*, 2013 WL 692789, at

*10.  The Court noted that "the only question the NMFS was charged with answering in its

biological opinion was whether [the SLOPES IV procedures]—addressing projects that *did not*

use treated wood—would harm any endangered species."  *Id.*  Thus, plaintiffs could not establish

that the NMFS had failed to consider "the best scientific and commercial data available" by

failing to consider guidelines on the *use* of treated wood.  *Id.*

Plaintiffs now seek reconsideration of that opinion on two grounds.  First, they argue that

by considering the Biological Opinion itself, this Court improperly converted the Rule 12(b)(6)

motion into a motion for summary judgment without following the procedures set out in Rule

12(d).  (*See* Mot. at 6-7.)  The Court declines to reconsider its previous opinion on this basis,

because it is well established that in ruling upon a motion to dismiss, "[t]he Court may consider

'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference

in the complaint,' or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties].'"  *Attakora v. District of Columbia*, No. 12-1413, 2013 WL 1899783, at *3 (D.D.C. May 8, 2013) (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)).  Although plaintiffs may not have expressly used the phrase "incorporated by reference" to describe the Biological Opinion in their complaint, there can be no doubt that their complaint "necessarily relies" on it, as they quote from and discuss it extensively.  (*See, e.g.*, Second Amended Complaint, Oct. 3, 2012 [ECF No. 12-1] ("Second Am. Compl.") ¶¶ 21-25.)

However, plaintiffs also seek reconsideration on the grounds that this Court misconstrued their claim.  Plaintiffs' complaint—in both its Second and Third Amended iterations—alleges that "the NMFS biological opinion on the SLOPES IV procedures violated NMFS' obligation in 16 U.S.C. § 1536(a)(2) to "use the best scientific and commercial data available."  (Second Am. Compl. ¶ 75; Proposed Third Amended Complaint, May 20, 2013 [ECF No. 20-1] ("Third Am. Compl.") ¶ 74.)  Specifically, plaintiffs complain that the NMFS disregarded its own guidelines on the use of treated wood by "ban[ning] all treated wood from . . . in-water or over-water structures in Oregon that are subject to the SLOPES IV procedures."  (Second Am. Compl. ¶ 75; Third Am. Compl. ¶ 74.)  This Court previously understood those allegations to relate to the NMFS' overall conclusion that the SLOPES IV procedures were not likely to jeopardize any threatened or endangered species or their habitats.  With that understanding, the Court concluded that plaintiffs' complaint did not state a claim under ESA.  *See WWPI I*, 2013 WL 692789, at *10.

Although plaintiffs' briefing remains murky at best on this issue, the Court now understands that plaintiffs intend these allegations to relate specifically to the Incidental Take Statement included within the Biological Opinion.  In their motion, plaintiffs explained that:

> The issue in this case[] arises from the ESA provision requiring that when, as here, NMFS concludes that a proposed agency action is not like[ly] to jeopardize any listed species, NMFS must issue an 'incidental take statement' authorizing incidental take for the action, including reasonable and prudent measures to minimize take, and nondiscretionary terms and conditions that the Federal action agency must comply with to carry out the reasonable and prudent measures.

(Mot. at 7.)  Here, as part of the Incidental Take Statement, the NMFS imposed a nondiscretionary term and condition specifying that "'[f]or each action with a general construction element, the Corps will apply design criteria 1 through 10 and 11 through 27 as enforceable permit conditions or as final project specifications.'"  (Mot. at 8 (quoting Biological Opinion [ECF No. 15-3] at 106).)  In other words, the NMFS' Incidental Take Statement imposed an obligation on the agency requiring it to enforce the various design criteria in the SLOPES IV procedures, including the prohibition on treated wood.  Plaintiffs' claim against the NMFS is apparently focused on that independent action, which they allege was done without consideration of "the best scientific and commercial data available," as required by the ESA.

With this understanding, the Court agrees that plaintiffs have stated a claim under the ESA.  The Supreme Court has expressly noted that a "Biological Opinion and accompanying Incidental Take Statement alter the legal regime to which the action agency is subject, authorizing it to take the endangered species if (but only if) it complies with the prescribed conditions."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  Thus, insofar as the NMFS made its own independent determination of which terms and conditions to apply to the SLOPES IV procedures, that determination "has direct and appreciable legal consequences" that can form the basis of a claim under the APA.  *Id.*  The Court will therefore grant plaintiffs' motion for

reconsideration with respect to the Court's dismissal with prejudice of claim 10 against the

NMFS for failure to state a claim under Rule 12(b)(6).  However, because that claim remains

dismissed *without prejudice* for lack of associational standing, it cannot be resurrected by means

of the proposed amended complaint.  Plaintiffs must re-file the claim in a new case with

adequate allegations regarding the injuries suffered by their member firms.[2]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for reconsideration is granted in part and

denied in part, and plaintiffs' Motion for Leave to File a Third Amended Complaint is denied.  A

separate Order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   July 22, 2013

---

[2] The parties also disagree as to whether plaintiffs' proposed claim 9 (previously claim 10) against the Corps under the ESA is barred by the notice requirement of the ESA's citizen-suit provision (*See* Opp'n at 13-16; Plaintiffs' Reply in Support of Their Motion for Leave to File a Third Amended Complaint, May 17, 2013 [ECF No. 26] at 15.)  However, because the Court has denied plaintiffs' request for leave to amend their complaint (*see supra* Section I), it need not rule on any arguments that relate to new additions in the amended complaint.  If plaintiffs re-file their complaint with additional plaintiffs, the Court can consider at that time whether those plaintiffs may bring a claim under the ESA against the Corps.